**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

SOPHIA MENDOZA, individually and on behalf of all others similarly situated,

*Plaintiff*,

vs.

NCB MANAGEMENT SERVICES, INC.,

*Defendant*.
_______________________________________/

**CLASS ACTION**

**Case No.**

**JURY TRIAL DEMANDED**

## CLASS ACTION COMPLAINT

1. Plaintiff Sophia Mendoza ("Plaintiff") brings this class action against Defendant NCB Management Services, Inc. ("NCB" or "Defendant") and alleges as follows upon personal knowledge as to Plaintiff and Plaintiff's own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by Plaintiff's attorneys.

## INTRODUCTION

2. Plaintiff brings this class action for damages resulting from Defendant's transmission of debt collection communications to Plaintiff after Plaintiff notified Defendant in writing that she wished Defendant to cease further communications with Plaintiff, in violation of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et seq.* (the "FDCPA").

3. Defendant is an accounts receivable management company and debt buyer. As part of its debt collection operations, Defendant sends consumers multiple debt collection communications, including text messages and telephone calls, in an attempt to collect alleged debts, even after consumers have communicated in writing that they do not wish to receive further communications.

4. Congress enacted the FDCPA in 1977 after noting the "abundant evidence of the use of abusive, deceptive, and unfair debt collection practices by many debt collectors." 15 U.S.C. § 1692(a).

5. At the time the FDCPA was being considered, Congress was concerned that "[a]busive debt collection practices contribute to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy." *Id.*

6. A significant purpose of the FDCPA is not only to eliminate abusive practices by debt collectors, but "to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged." *Id.*

7. The FDCPA is a remedial statute, which is construed broadly so as to effect its purpose of protecting consumers. *See, Brown v. Card Serv. Ctr.*, 464 F.3d 450, 453 (3d Cir. 2006).

8. Plaintiff is one such consumer. After receiving a series of debt collection messages from Defendant attempting to collect an alleged debt, Plaintiff

notified Defendant in writing that she wished Defendant to cease further debt collection communications.

9. Nonetheless, Defendant continued to send Plaintiff debt collection communications after Plaintiff communicated her desire to cease further communications.

10. Through this action, Plaintiff seeks injunctive relief to halt Defendant's unlawful conduct, which has resulted in the invasion of privacy, harassment, aggravation, and disruption of the daily life of Plaintiff and the Class members. Plaintiff also seeks statutory damages on behalf of Plaintiff and members of the Class, and any other available legal or equitable remedies.

11. Plaintiff seeks relief for herself, and all others similarly situated for Defendant's unlawful behavior.

**JURISDICTION AND VENUE**

12. This Court has original jurisdiction over this matter pursuant to 28 U.S.C. § 1331 because Plaintiff's claims arise under the federal Fair Debt Collection Practices Act. *Mims v. Arrow Fin. Serv., LLC*, 132 S. Ct. 740, 751–53 (2012).

13. The Court has personal jurisdiction over Defendant because Defendant is headquartered in this District.

14. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because Defendant is headquartered in this District.

## PARTIES

15. Plaintiff is, and at all times mentioned herein was, an adult individual residing in Washoe County, Nevada.

16. Defendant NCB Management Services, Inc. maintains its principal office at One Allied Drive, Trevose, Pennsylvania 19053. Defendant is a debt collector whose principal purpose is the collection of debts, and it regularly collects or attempts to collect debts owed or due or asserted to be owed or due another.

## FACTS

17. Plaintiff incurred an alleged debt (the "Debt") arising out of services rendered by the creditor to whom the Debt was originally owed, which debt was incurred primarily for personal, family, or household purposes.

18. The Debt meets the definition of a "debt" under 15 U.S.C. § 1692a(5).

19. Thereafter, the creditor to whom the Debt was originally owed enlisted Defendant to collect the Debt on its behalf. Defendant meets the definition of "debt collector" under 15 U.S.C. § 1692a(6), as its principal purpose is the collection of debts and it regularly collects debts owed to another.

20. On or about October, 2026, Defendant began sending debt collection text messages to Plaintiff's cellular telephone, number (XXX) XXX-9607, from short code number 272-37, in an attempt to collect the Debt, including, but not limited to, a message sent on or about October 3, 2026, as shown below:




21. The messages Defendant sent to Plaintiff were substantially similar to one another and to messages Defendant sent to other consumers across the country.

22. On or about October 5, 2026, after receiving debt collection text messages from Defendant, Plaintiff notified Defendant in writing that she wished

Defendant to cease further communications with Plaintiff by responding "Stop" to Defendant's debt collection text messages, as shown above. Thereafter, Defendant confirmed that Plaintiff would no longer receive text messages,

23. Plaintiff's written "Stop" message constituted a clear, unambiguous written request that Defendant cease further communications with Plaintiff within the meaning of 15 U.S.C. § 1692c(c).

24. However, notwithstanding Plaintiff's written communication requesting that Defendant cease further contact, Defendant continued to send Plaintiff debt collection communications. Specifically, on October 6, 2026, and October 7, 2026, Defendant placed debt collection telephone calls to Plaintiff's cellular telephone from telephone numbers (775) 869-5060 and (775) 869-5338, respectively, in an attempt to collect the Debt, despite Plaintiff's prior written cease-communication request, as shown below:



25. Plaintiff's time was wasted tending to Defendant's debt collection communications sent after she communicated her request that Defendant cease further communications.

26. Moreover, Defendant's continued debt collection communications annoyed, frustrated, and angered Plaintiff.

27. Plaintiff's receipt of Defendant's unauthorized debt collection communications disrupted Plaintiff's daily life and invaded her privacy.

28. Defendant either willfully ignored or affirmatively opted not to implement proper protocols and safeguards to assure cease-and-desist requests are honored.

29. Defendant sent the same or similar debt collection communications to members of the putative Class after they asked it to cease its debt collection communications.

30. All members of the putative Class suffered a concrete and particularized injury, as they received the type of communication they instructed Defendant not to send and their privacy rights protected by Congress through 15 U.S.C. § 1692c(c) were violated.

31. Plaintiff is informed and believes that Defendant sent the same or similar debt collection communications to members of the putative Class after they asked Defendant to cease its debt collection communications.

32. Defendant's communications caused Plaintiff and the Class members harm, including wasted time responding to the communications, violations of their statutory rights, annoyance, nuisance, invasion of their privacy, and intrusion upon seclusion.

## CLASS ACTION ALLEGATIONS

### A. The Proposed Class

33. Plaintiff brings this case as a class action pursuant to Fed. R. Civ. P. 23 on behalf of herself and all others similarly situated.

34. Plaintiff brings this case on behalf of the Class defined as follows:

> **FDCPA Class: All persons within the United States to whom Defendant or its agent/s and/or employee/s sent a debt collection communication (including text messages, telephone calls, or emails) to said person's cellular telephone or electronic mail address within the one year period prior to the filing of the Complaint, after said person had previously communicated in writing a refusal to pay the debt and/or a request that Defendant cease further communication.**

35. Plaintiff reserves the right to modify the Class definition as warranted as facts are learned in further investigation and discovery.

36. Defendant and its employees or agents are excluded from the Class. Plaintiff does not know the number of members in the Class but believes the members of the Class number in the several thousands, if not more. Thus, this matter

should be certified as a class action to assist in the expeditious litigation of this matter.

**B. <u>Numerosity</u>**

37. Upon information and belief, Defendant has placed debt collection communications to cellular telephone numbers and electronic mail addresses belonging to thousands of consumers throughout the United States after receiving written communications asking it to cease contact. The members of the Class, therefore, are believed to be so numerous that joinder of all members is impracticable.

38. The exact number and identities of the Class members are unknown at this time and can only be ascertained through discovery. Identification of the members of the Class is a matter capable of ministerial determination from Defendant's records.

**C. <u>Common Questions of Law and Fact</u>**

39. There are questions of law and fact common to the Class that predominate over any questions affecting only individual members of the Class. These questions include:

a) Whether Defendant sent debt collection communications to Plaintiff's and Class members' cellular telephones or electronic mail addresses after being advised in writing to cease communications;

b) Whether Defendant's practice of sending debt collection communications to consumers after being asked to cease doing so violates the FDCPA;

c) Whether Defendant is liable for damages, and the amount of such damages; and

d) Whether Defendant should be enjoined from such conduct in the future.

40. The common questions in this case are capable of having common answers. If Plaintiff's claim that Defendant routinely places debt collection communications to telephone numbers assigned to cellular telephone services and to electronic mail addresses after being asked to cease communications is accurate, Plaintiff and the Class members will have identical claims capable of being efficiently adjudicated and administered in this case.

**D. <u>Typicality</u>**

41. Plaintiff's claims are typical of the claims of the Class members, as they are all based on the same factual and legal theories.

**E. <u>Protecting the Interests of the Class Members</u>**

42. Plaintiff is a representative who will fully and adequately assert and protect the interests of the Class and has retained competent counsel. Accordingly,

Plaintiff is an adequate representative and will fairly and adequately protect the interests of the Class.

### F. Proceeding Via Class Action is Superior and Advisable

43. A class action is the superior method for the fair and efficient adjudication of this controversy. Congress specifically provided, at 15 U.S.C. § 1692k, for the commencement of class actions as a principal means of enforcing the FDCPA. In addition, the interest of the Class members in individually controlling the prosecutions of separate claims against Defendant is small because it is not economically feasible for members of the Class to bring individual actions.

44. Absent a class action, most members of the Class would find the cost of litigating their claims to be prohibitive and, therefore, would have no effective remedy at law.

45. The members of the Class are generally unsophisticated individuals, whose rights will not be vindicated in the absence of a class action.

46. The class treatment of common questions of law and fact is also superior to multiple individual actions or piecemeal litigation in that it conserves the resources of the court and the litigants and promotes consistency and efficiency of adjudication.

47. Prosecution of separate actions could result in inconsistent or varying adjudications with respect to individual members of the Class that would establish

incompatible standards of conduct for Defendant and other debt collectors. Conversely, adjudications with respect to individual members of the Class would be dispositive of the interest of all other members of the Class.

48. The amount of money at issue is such that proceeding by way of a class action is the only economical and sensible manner in which to vindicate the injuries sustained by Plaintiff and the other members of the Class.

**COUNT I**
**Violations of the Fair Debt Collection Practices**
**Act, 15 U.S.C. § 1692c(c)**
**(On Behalf of Plaintiff and the FDCPA Class)**

49. Plaintiff repeats and re-alleges paragraphs 1 through 49 of this Complaint and incorporates them herein by reference.

50. The FDCPA, 15 U.S.C. § 1692c(c) provides that "[i]f a consumer notifies a debt collector in writing . . . that the consumer wishes the debt collector to cease further communication with the consumer, the debt collector shall not communicate further with the consumer with respect to such debt, except—(1) to advise the consumer that the debt collector's further efforts are being terminated; (2) to notify the consumer that the debt collector or creditor may invoke specified remedies which are ordinarily invoked by such debt collector or creditor; or (3) where applicable, to notify the consumer that the debt collector or creditor intends to invoke a specified remedy."

51. Plaintiff and members of the putative class each notified Defendant in writing that they wished Defendant to cease further communications by communicating in writing their refusal to pay the debt and/or their desire that Defendant cease further contact, but Defendant nonetheless proceeded to communicate with Plaintiff and members of the putative class through subsequent debt collection text messages, telephone calls, and/or emails.

52. Moreover, Defendant's subsequent post-Stop communications sought to collect consumers' debts and demanded payments from Plaintiff and members of the putative class; the communications did not advise that Defendant's further efforts were being terminated nor did they state that Defendant may invoke specified remedies which are ordinarily invoked by Defendant or notify Plaintiff or members of the putative class that Defendant intended to invoke a specified remedy.

53. By virtue of the foregoing, Plaintiff is entitled to recover damages as prayed for herein.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays that the Court grant Plaintiff and the Class the following relief against Defendant:

a) Certification of the FDCPA Class, pursuant to Fed. R. Civ. P. 23;

b) Actual and statutory damages as provided under the FDCPA, pursuant to 15 U.S.C. § 1692k;

c) An award of attorneys' fees and costs to counsel for Plaintiff pursuant to 15 U.S.C. § 1692k(a)(3); and

d) Such other relief as the Court deems just and proper.

**JURY DEMAND**

Plaintiff hereby demands a trial by jury.

**DOCUMENT PRESERVATION DEMAND**

Plaintiff demands that Defendant take affirmative steps to preserve all records, lists, electronic databases or other itemization of telephone numbers and email addresses associated with Defendant and the communication or transmittal of the text messages, telephone calls, and emails as alleged herein.

Dated: November 17, 2026

Respectfully submitted,

**KIMMEL & SILVERMAN, P.C.**

*/s/ Jacob U. Ginsburg*
Jacob U. Ginsburg, Esq. (PA 311908)
30 East Butler Avenue
Ambler, PA 19002
Telephone: (267) 468-5374
Fax: (877) 788-2864
jginsburg@creditlaw.com
teamkimmel@creditlaw.com

*Counsel for Plaintiff and the Class.*